**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA A. WILLIAMS, | |
| Plaintiff, | Civil Action No. 16-5567 (ES) (JAD) |
| v. | OPINION |
| I.B.E.W. LOCAL 604 SYSTEM COUNCIL 7, et al. | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant I.B.E.W. Local 604 System Council 7's ("Defendant's")[1] motion to dismiss the Amended Complaint (D.E. No. 37) of *pro se* plaintiff Barbara A. Williams ("Plaintiff"). (D.E. No. 40). The Court has considered the parties' submissions,[2] and decides the motion without oral argument. *See* L. Civ. R. 78.1(b); *see also* Fed. R. Civ. P. 78(b). For the below reasons, the Court GRANTS-in-part and DENIES-in-part the motion to dismiss.

**I.     Background**

The Court will "set out facts as they appear" in the Amended Complaint. *See Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012). In sum, Plaintiff alleges that Defendant, "on the basis

---

[1]     Plaintiff distinguishes what appears on the docket as one entity—"I.B.E.W. Local 604 System Council 7"—as two—"System Council No.7" and "Local Union No. 604"—and calls them both "labor unions" of which she "is a Union member." (*See* D.E. No. 37 ("Am. Compl.") ¶ 2–3). For ease of reference, and because it will not affect the Court's legal analysis, the Court will refer to one "Defendant."

Notably, there are four other named defendants on the docket in this case: Author J. Davidson, Steven R. Corrado, John Woloszczak, III, and Thomas Earl. These defendants were named in the original complaint (D.E. No. 1) but it is unclear whether Plaintiff intended to name them again in the Amended Complaint (*see* D.E. No 37). Regardless, as the Court will suggest below, the Amended Complaint does not contain factual allegations plausibly linking any of those defendants to any instance of alleged discrimination. (*See generally* Am. Compl.).

[2]     (*See* D.E. Nos. 37, 40, 42 & 43).

of gender," engaged in "harassment, discrimination and retaliation" against Plaintiff, who at the relevant times was a "union member" of Defendant. (*See* Am. Compl. ¶¶ 1–3 & 6). The events giving rise to this matter stretch as far back as July 28, 1982, when Plaintiff was hired by "NJTRO"[3] (*see id.* ¶¶ 15–16), and the 2000's, when Plaintiff asserts that she was discriminated against at various times (*see, e.g.*, *id.* ¶ 22 (asserting that in "August 2007" Plaintiff was "treated differently from the male union members")). Plaintiff asserts that such discrimination has persisted until 2014 or later. (*See, e.g.*, Am. Compl. ¶ 181).

Plaintiff, consequently, brings three counts in the Amended Complaint:

- Count I: "Discrimination Claims" (*id.* ¶¶ 3–9)[4]

- Count II: "Violations of the Civil Rights [Act of] 1964" (*id.* ¶¶ 10–11)

- Count III: "Violation of the New Jersey Equal Pay Act"[5] (*id.* ¶¶ 12–14)

Defendant moved to dismiss the Amended Complaint, contending that "the allegations raised concern actions that occurred outside the [Title VII] statute of limitations or, in the case of the New Jersey Equal Pay Act, arise under a statute that applies only to employers." (D.E. No. 40-2 at 4). Defendant does not mention the NJLAD. (*See generally* D.E. No. 40-2 & 43).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." But, to survive a motion to

---

[3] "NJTRO," Plaintiff's apparent employer, is a "non-party." (*See, e.g.*, Am. Compl. ¶¶ 7 (calling NJTRO a "non-party" and recognizing that NJTRO is the entity that "pay[s]" Plaintiff)). "NJTRO," the Court gleans from submissions attached to the Amended Complaint, is New Jersey Transit Rail Operations. (*See, e.g.*, D.E. No. 37 at 40). (All citations to page numbers of filings refer to their E.C.F. pagination in the upper-righthand corner.)

[4] In the context of this count, Plaintiff apparently relies on both the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et. seq.* ("NJLAD"), and the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*. ("Title VII"). (*See, e.g.*, Am. Compl. ¶¶ 1 & 4).

[5] N.J.S.A 34:11-56.1 *et. seq.* ("NJEPA").

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). A complaint cannot suffice "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement,'" because while Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Pursuant to the pleading regime established by *Twombly* and *Iqbal*, the Court of Appeals for this Circuit has promulgated a three-pronged test of the sufficiency of a complaint. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court considers "the elements a Plaintiff must plead to state a claim." *Id.* Second, the Court distinguishes the facts from the legal conclusions contained in the complaint, as the latter "are not entitled to an assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). That is, a complaint's "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Finally, the Court considers the complaint's remaining well-pleaded factual allegations and "determine[s] whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 679).

Throughout this process, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *See, e.g.*, *McDermott v. Clondalkin Grp., Inc.*, 649 F.

App'x 263, 266 (3d Cir. 2016). And, further, "[i]n considering the defendants' motion to dismiss, the . . . Court [i]s required to interpret the *pro se* complaint liberally . . . ." *See, e.g.*, *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. Analysis

### A. Title VII

As a threshold matter, for the below reasons, Plaintiff's Title VII claims are time-barred to the extent that they are not based on conduct that occurred within 180 days of June 16, 2014.[6]

Plaintiff identifies three right-to-sue letters she received in connection with her claims of discrimination: One mailed "[o]n or about August 23, 2010" (*see id.* ¶ 47); one "[o]n January 6, 2015" (*see id.* ¶ 177; D.E. No. 37 at 39); and one "[o]n June 13, 2016" (*see* Am. Compl. ¶ 182; D.E. No. 37 at 55). But the actual date of receipt of the June 13 letter is not known: The Amended Complaint states only, "On June 13, 2016 Right To Sue Letter." (*See id.* ¶ 182). The Court "will presume that [P]laintiff received her right-to-sue letter three days after the EEOC mailed it," on June 16, 2016. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999). Therefore, Plaintiff had until September 14, 2016, to file a complaint. *See generally* Fed. R. Civ. P. 201. Plaintiff originally filed a complaint on September 13, 2016. (D.E. No. 1 at 1 (recognizing that the complaint was "RECEIVED" on "SEP 13 2016")); *see also* Fed. R. Civ. P. 5(d)(2)(A). Therefore, not more than ninety days had passed since receipt of the most recent right to sue letter;

---

[6] Defendant apparently concedes that Plaintiff "may . . . complain about events that occurred beginning . . . February 2, 2014." (*See* D.E. No. 40-2 at 6). Defendant, however, does not provide citations to the record or legal authority to support its identification of February 2, 2014, as an operative date. (*See, e.g.*, D.E. No. 40-2 at 6).

- 4 -

and the complaint was timely with respect to the conduct encompassed by that letter. *See, e.g.*, *Gavura v. Pennsylvania State House of Representatives*, 55 F. App'x 60, 61 n.2 (3d Cir. 2002). In contrast, any claims in connection with the other two right-to-sue letters are plainly not timely, and Plaintiff has not identified any basis for "equitable tolling of the ninety-day period." *See, e.g.*, *Myrick v. Discover Bank*, 662 F. App'x 179, 181–82 (3d Cir. 2016). Accordingly, the Court will proceed with an analysis of Plaintiff's gender discrimination claims in connection with only the June 13 right-to-sue letter. *See, e.g.*, *Gavura*, 55 F. App'x at 61 & n.2.

The June 13 right-to-sue letter resulted from a discrimination charge Plaintiff filed on June 16, 2014. (Am. Compl. ¶ 100; D.E. No. 37 at 56). "A plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice, or within 300 days after the alleged unlawful employment practice if the plaintiff initially instituted proceedings with a state or local agency." *Freeman v. Harris*, 716 F. App'x 132, 133 (3d Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)). This time period is "treated as" a statute of limitations. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Thus "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Here, Plaintiff does not allege or document a "cross-filing with a state agency under state law," so only conduct within 180 days of June 16, 2014, would be actionable. *See Burgh*, 251 F.3d at 472.

The Court now turns to the merits.

"Under Title VII, a Union is barred from discriminating against its members based on race, color, religion, sex, or national origin." *Martinez v. Int'l Bhd. of Elec. Workers-IBEW Local Union No. 98*, 352 F. App'x 737, 740 (3d Cir. 2009) (citing 42 U.S.C. § 2000e-2(c)). But "[w]hile a union may be held liable under Title VII, the record [must] demonstrate that the Union *itself*

instigated or actively supported the discriminatory acts allegedly experienced by [Plaintiff]." *See Anjelino v. New York Times Co.*, 200 F.3d 73, 95–96 (3d Cir. 1999). In other words, a "[u]nion cannot be held liable for . . . alleged discrimination . . . unless the [u]nion took an active role in the discrimination." *See, e.g.*, *Martinez*, 352 F. App'x at 740; *see also Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 407 (D.N.J. 2008) ("[T]o hold unions liable for failing to remedy the potentially illegal acts of the true employers would be contrary to the approach that the Third Circuit has adopted [in *Anjelino*]." (internal quotation marks omitted)).

Here, the Amended Complaint does not plausibly support the inference "that [Defendant] *itself* instigated or actively supported the discriminatory acts allegedly experienced by [Plaintiff]" during the relevant period. *See Anjelino*, 200 F.3d at 95–96. For instance, during December 2013, Plaintiff alleges that she "lost out on the Denville NJ supervisor Job . . . while [she] was on vacation." (*See* Am. Compl. ¶ 79). But no allegation in the Amended Complaint connects Defendant—or any other named defendant (*see supra* note 1)—to the decision to deny her that job. (*See id.*). Similarly, Plaintiff alleges that on May 6, 2014, she "submitted [a] complaint . . . about being . . . charged an extra 2 [] hours of overtime hours worked by the other male union members"—members who "volunteer[ed] to start earlier than the regular start time"—but does not allege that Defendant, as opposed to NJTRO, charged her those hours. (*See id.* ¶ 89). Defendant, a labor union, "was not the employer of the [Plaintiff]; *this is so even though some of the supervisors and workers who are alleged to have discriminated against [Plaintiff] may have [also] been members of [Defendant]*." *See Anjelino*, 200 F.3d at 95–96 (emphasis added).

A similar flaw afflicts all relevant instances of discrimination Plaintiff alleges. (*See, e.g.*, Am. Compl. ¶¶ 82 & 83 (complaining of "retaliation" based on the "abolishment of [job]

position[s]");⁷ *id.* ¶ 84 & 115 (citing D.E. No. 1-1 at 38) (complaining that Plaintiff was "skipped over" for overtime work and work in "substation switching," not by an agent of Defendant, but by a "a male . . . manager");⁸ *id.* ¶¶ 85–99 (complaining that Plaintiff "did not receive [a] westend foreman rate" of pay; failing to allege any plausible connection between Defendant and Plaintiff's rate of pay); *id.* ¶ 94 (complaining that "other males" were "performing [Plaintiff's] job"); *id.* ¶ 96 (citing D.E. No. 1-3 at 25–27) (complaining not that an agent of Defendant, but a "male union member[,] separated the males from" Plaintiff)). "[T]o hold [Defendant] liable for failing to remedy the [foregoing] potentially illegal acts of [Plaintiff's actual] employer[] would be contrary to the approach that the Third Circuit has adopted [in *Anjelino*]." *See, e.g., Figueroa*, 580 F. Supp. at 407 (internal quotation marks omitted).⁹ Accordingly, the Court declines to do so. *See, e.g.*, *id.*

Moreover, to the extent that Plaintiff complains of conduct *after* June 16, 2014, that conduct is "outside the scope of her charge of discrimination." *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010). "A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC for conciliation or resolution." *See Robinson v. Dalton*, 107

---

⁷ Plaintiff's retaliation claim also fails because she was required to plead that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *See Waiters v. Aviles*, 418 F. App'x 68, 72 (3d Cir. 2011). Here, the Complaint fails to allege any plausible "causal connection" with Plaintiff's "participation in [a] protected activity." *See Waiters*, 418 F. App'x at 72; (Am. Compl. ¶ 82).

⁸ Plaintiff asserts that Defendant was "overseeing the overtime book after . . . new rules added in 2009" (Am. Compl. ¶ 103), but does not otherwise explain that assertion and "does not demonstrate that [Defendant] *itself* instigated or actively supported the discriminatory acts allegedly experienced by [Plaintiff]." *See Anjelino*, 200 F.3d at 95–96.

⁹ For that reason, Plaintiff similarly does not state a claim based on her allegation that Defendant "has failed to respond appropriately to grievances or otherwise adequately address the workplace ongoing issues." *See* (Compl ¶ 15); *Figueroa*, 580 F. Supp. at 407. And although Plaintiff asserts that the manner in which Defendant processed grievances "caused [her] to not be treated equal like the male union members" (*see, e.g.*, Am. Compl. 6, 16 & 64–65), that assertion is a "mere conclusory statement[]," an "unadorned, the-defendant-unlawfully-harmed-me accusation," which is insufficient to state a claim upon which relief can be granted. *See, e.g., Iqbal*, 556 U.S. at 678.

F.3d 1018, 1022 (3d Cir. 1997) (cleaned up). And because she has failed to exhaust her administrative remedies regarding conduct after June 16, 2014, Plaintiff cannot bring a Title VII claim on that basis. *See, e.g.*, *Figueroa*, 580 F. Supp. 2d at 400 (citing 42 U.S.C. § 2000e–5; *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)) ("[Title VII] requires an aggrieved party to file, within 180 days of the alleged discriminatory practice, a charge with the EEOC and receive a 'right to sue' letter *before bringing an action*;" "a party must . . . exhaust these administrative remedies *before suing in federal court*" (emphases added)).

**B. NJLAD**

The statute of limitations bars any NJLAD claim based on conduct prior to September 13, 2014. *See Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 938 (3d Cir. 2009); *Rivera v. Cont'l Airlines*, 56 F. App'x 567, 571 (3d Cir. 2003) (citing *Ali v. Rutgers*, 765 A.2d 714, 717–18 (N.J. 2000)) ("The statute of limitations applicable to . . . NJLAD claims is two years.").[10] But for the following reasons, the Court cannot rule that Plaintiff has failed to state an NJLAD claim against Defendant arising from conduct *after* September 13, 2014.

"The prohibitions against unlawful discrimination and employment discrimination contained in the NJLAD are expressly applicable to labor unions." *Treusch v. Ctr. Square Supermarket, LLC*, 921 F. Supp. 2d 336, 351 (D.N.J. 2013) (citing N.J.S.A. 10:5–12(b)). And, for instance, Plaintiff asserts that Defendant told her "to provide documentation to support being paid an upgrade that are given without documentation to the male union members" (Am. Comp. ¶ 156)[11]

---

[10] As observed above, Plaintiff initially filed a complaint on September 13, 2016. (*See* D.E. No. 1 at 1 (recognizing that the complaint was "RECEIVED" on "SEP 13 2016")); *see also* Fed. R. Civ. P. 5(d)(2)(A).

[11] The numbers "156" and "157" are used to number four different paragraphs in the Amended Complaint. (*See* D.E. No. 37 at 34). In the text above, the Court is citing the first of those four paragraphs. (*See id.*). The Court notes that there are some other numbering issues throughout the document. (*See, e.g.*, *id.* at 37).

and alleged the existence of "continuous discriminatory actions from the male labor unions officials [sic.]" (*see, e.g.*, *id.* ¶ 169).[12]  "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).  Yet, here, Defendant utterly failed to address Plaintiff's NJLAD claims or suggest a basis for their dismissal.  (*See generally* D.E. No. 40-2 & 43).

Nonetheless, because the Court dismisses all claims over which it has original jurisdiction,[13] it will "decline to exercise supplemental jurisdiction" over the remaining state-law NJLAD claim.  *See Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015); *Mathis v. Philadelphia Elec. Co.*, 644 F. App'x 113, 116 (3d Cir. 2016).

**C. New Jersey Equal Pay Act ("NJEPA")**

The NJEPA provides in relevant part: "No *employer* shall discriminate in any way in the rate or method of payment of wages to any employee because of his or her sex." N.J.S.A. § 34:11-56.2 (emphasis added).  And the NJEPA permits an *employee* to "recover in a civil action" because "of his or her *employer's* violation of [N.J.S.A. § 34:11-56.2]." N.J.S.A. § 34:11-56.8 (emphasis added).  Plaintiff does not allege that any defendant employed her and she cites no legal authority to support the proposition that the NJEPA would permit her to sue an entity that did not employ her.  (*See generally* Am. Compl.; D.E. No. 42).  The Court has discerned none.  *See, e.g.*, *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (describing "*the employer's* burden in an Equal

---

[12] Plaintiff apparently also alleges that Defendant "aided and abetted in the harassment, discrimination and retaliation" by her employer.  (Am. Compl. ¶ 2); *see also* N.J.S.A. § 10:5–12(e) ("It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or any person . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so.").

[13] The Court lacks original jurisdiction over Plaintiff's state-law NJLAD claim because "[f]or diversity jurisdiction to lie, there must be 'complete diversity' amongst the parties;" and complete diversity "means that the plaintiff cannot be a citizen of the same state as any of the defendants." *See Fink v. Kirchner*, 731 F. App'x 157, 159 n.4 (3d Cir. 2018).  Here, apparently, both Plaintiff and Defendant—Plaintiff's "local union . . . in New Jersey" (*see* Am. Compl. ¶ 3)—are citizens of New Jersey.

Pay Act claim" (emphasis added)). Because the Amended Complaint does not allege that Defendant or any named defendant was Plaintiff's employer (*see generally* Am. Compl.)—Plaintiff's employer is a "non-party" (*see supra* note 3)—the NJEPA claim must also be dismissed.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS-in-part and DENIES-in-part the motion to dismiss:

- Plaintiff's Title VII claims that are based on conduct that occurred *before* 180 days of June 16, 2014, are dismissed *with prejudice*;

- Plaintiff's Title VII claims that are based on conduct that occurred *within* 180 days of June 16, 2014, are dismissed *without prejudice*;

- Plaintiff's Title VII claims that are based on conduct that occurred *after* June 16, 2014, are dismissed *without prejudice*;

- Plaintiff's NJLAD claims that are based on conduct *before* September 13, 2014, are dismissed *with prejudice*;

- Plaintiff's NJLAD claims that are based on conduct *after* September 13, 2014, are dismissed *without prejudice*; and

- Plaintiffs NJEPA claims are dismissed *without prejudice*.

To the extent Plaintiff can cure any deficiencies identified in this Opinion, **Plaintiff may do so within thirty days in an amended complaint. But the Court may dismiss the Amended Complaint *with prejudice* or close this case "if a timely amendment is not forthcoming within that time,"** *see Shane v. Fauver*, **213 F.3d 113, 116 (3d Cir. 2000) (quoting** *Borelli v. City of Reading*, **532 F.2d 950, 951 n.1 (3d Cir. 1976) (per curiam)), or if Plaintiff fails to cure any deficiencies identified in this Opinion.**

An appropriate order will accompany this Opinion.

*s/Esther Salas*<br>
**Esther Salas, U.S.D.J**